**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **RALPH W. MELLO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:10-cv-243** |
| | ) | |
| **HARE, WYNN, NEWELL & NEWTON, LLP,** | ) | **Judge Thomas A. Wiseman, Jr.** |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Before the Court is Defendant Hare, Wynn, Newell & Newton, LLP's Amended Motion to Dismiss and alternative Motion for Transfer (Doc. No. 11).[1]  The defendant ("Hare, Wynn") asserts that Plaintiff Ralph Mello's claim is barred because it is in reality a claim against the bankruptcy estate of non-party Scott Pogue (Mello's former client in a *qui tam* False Claims Act lawsuit) (hereafter, the "Bankruptcy Estate") and that, as such, the complaint must be dismissed.  Alternatively, Hare, Wynn maintains that if the matter is not dismissed, a change of venue to the United States District Court for the Northern District of Alabama, pursuant to 28 U.S.C. § 1404, would serve the interests of justice and equity.  In response, Mello responds that the present complaint asserts state-law claims directly against Hare, Wynn, not against Pogue's Bankruptcy Estate or Trustee, and that the suit arises under Tennessee law based upon Hare, Wynn's failure to honor Mello's attorney's fee lien on the proceeds of the *qui tam* settlement, failure to honor the assignment of a portion of the proceeds of the settlement to Mello, breach of a duty to satisfy statutory and equitable liens and an assignment, conversion and breach of contract.  (*See* 1st Am. Compl., Doc. No. 29.)

The Court has considered the factual and procedural background of this case and has taken judicial notice of the legal filings submitted in Scott Pogue's Chapter 11 bankruptcy proceedings still

---

[1] This Amended Motion to Dismiss (Doc. No. 11) supersedes the original Motion to Dismiss (Doc. No. 5), which should be stricken from the docket.

pending in the Bankruptcy Court for the Northern District of Alabama, Case No. 07-00838-TBB-11.[2]   The

Court has likewise considered the parties' arguments and the relevant law.

This Court is sympathetic to Plaintiff Ralph Mello's position, and understands that he seeks to

assert equitable and legal claims against Defendant Hare, Wynn that are distinct and separate from his

claim against Pogue's Bankruptcy Estate for the legal fee to which Mello is entitled pursuant to an

equitable and statutory lien, as well as an assignment.   It is nonetheless clear that property of a

bankruptcy estate is broadly defined by the bankruptcy code to include "all legal or equitable interests of

the debtor in property as of the commencement of the case," and "[a]ny interest in property that the estate

acquires after the commencement of the case."   11 U.S.C. §§ 541(a)(1) and (a)(7).   Thus, "[m]oney

whose origin is part of the pre-petition period belongs to the estate pursuant to § 541."   *Hartley v.*

*Derryberry (In re Hartley)*, 47 B.R. 159, 161 (Bkrtcy. N.D. Ohio 1985), *quoted in In re Clipper Int'l Corp.*,

154 F.3d 565, 567 (6th Cir. 1998).   In addition, the law is also clear that the bankruptcy court properly has

jurisdiction over core proceedings affecting the bankruptcy estate, including matters concerning the

"allowance or disallowance of claims against the estate or exemptions from property of the estate," 28

U.S.C. § 157(b)(2)(B); and "determinations as to the validity, extent, or priority of liens," *id.* § 157(b)(2)(K).

It is the bankruptcy judge's prerogative to determine whether a proceeding is a core proceeding or

otherwise related to a case under title 11.   *Id.* § 157(b)(3).   Further, the bankruptcy court may hear related

proceedings if referred by the district court on the district in which the bankruptcy is pending.   *Id.* §

157(c)(1).

The Sixth Circuit's decision in *In re Clipper* is particularly instructive here.   In that case, the

trustee reopened a Chapter 7 case to commence an adversary proceeding to recover a dividend payment

received after the case had been closed, and the debtor's counsel had retained a portion of the dividend

recovered to pay their fee, pursuant to a state court order in an action to recover the dividend from the

debtor's successor-in-name.   The bankruptcy court granted summary judgment in favor of the debtor's

attorneys, allowing them to retain a portion of the funds as their fee.   The bankruptcy trustee appealed,

---

[2] *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir.2008) (a court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion, but may only take judicial notice of facts which are not subject to reasonable dispute).   Here, the Court takes notice of the bankruptcy filings, not necessarily for the truth of their contents (unless beyond dispute) but for the fact that the filings and various rulings were made.

and the district court reversed summary judgment in favor of debtor's counsel.  On appeal, the Sixth

Circuit held that the district court had correctly concluded that the attorneys' refusal to turn over to the

trustee that portion of the dividend they had retained as legal fees constituted conversion under Michigan

law, as the funds properly were payable to the bankruptcy estate.  The court observed:

> The plain language of the Bankruptcy Code provides that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee. . . ."  11 U.S.C. § 542(b). Moreover, a custodian of property with notice of the commencement of bankruptcy proceedings 'shall deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property. . . .' 11 U.S.C. § 543(b)(1)."

*In re Clipper Int'l Corp.*, 154 F.3d at 568.  Where the attorneys argued that their retention of the fee could

not amount to conversion because they came into the funds pursuant to a state-court decree, the court

nonetheless held that "the dividend distribution . . . was properly included in the estate of the debtor," as a

result of which "only the bankruptcy court had jurisdiction to direct the manner in which such monies

would be divided."  *Id.*  Further, the district court's determination to that effect "recognize[d] the important

principle that a court without jurisdiction over the *res* of an action cannot divert property of a bankruptcy

estate from the trustee administering that estate."  *Id.*

  In the present case, Hare, Wynn clearly had notice of Pogue's pending bankruptcy proceedings

when it came into possession of the *qui tam* action settlement proceeds.  Mello argues that Hare, Wynn

breached a duty to him by failing to submit directly to him, rather than to Pogue's Bankruptcy Estate, the

attorney's fee amount that had been assigned to him contractually and with respect to which he has both

an equitable and statutory lien.  *In re Clipper*, however, strongly suggests that Hare, Wynn had a duty to

submit the funds to the Bankruptcy Estate, and that if it had not done so, it might well have been subject

to suit by the Estate for conversion of funds in which the Estate had an equitable interest.  The issue

presented here, as in *Clipper*, concerns the validity of Mello's liens, and the question of whether the fee

owed to Mello is properly part of the Bankruptcy Estate.  These matters are clearly either core

proceedings or else very closely related to Pogue's chapter 11 proceedings.  *Cf. Robinson v. Mich.

Consol. Gas. Co., Inc.*, 918 F.2d 579, 583 (6th Cir. 1990) (holding under 28 U.S.C. § 1334(b)[3] that the

---

[3] Section 1334(b) states as follows:

test to be applied in determining whether a lawsuit is "related to" a debtor's bankruptcy proceedings is whether the outcome of the plaintiff's claims against the defendant could conceivably have any effect on the debtor's estate).

The question remains whether dismissal or transfer of the matter before this Court is appropriate. The Court notes that, while Hare, Wynn seeks transfer under 28 U.S.C. § 1404, there is also a transfer provision specific to bankruptcy cases, 28 U.S.C. § 1412.   The latter provision states:   "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."   28 U.S.C. § 1412.   Although § 1404(a) and § 1412 are similar, there are several important differences between them.   First, the "'interest of justice' and 'convenience of the parties' standards in § 1412 are disjunctive and separate, and transfer is appropriate even if only one is met."   *MD Acquisition, LLC v. Myers*, No. 2:08cv494, 2009 WL 466383, at *6 (S.D. Ohio Feb. 23, 2009).   Second, while the factors to consider in evaluating a § 1412 transfer are similar to the § 1404(a) factors, the interests of the bankruptcy estate, as opposed to the other litigants' interests, are paramount in connection with the "interest of justice" analysis conducted in the context of a § 1412 transfer.   *In re DryTech*, 2008 WL 4525331, at *4  (citing *Sudbury, Inc. v. Dlott*, 149 B.R. 489, 492 (Bankr. N.D. Ohio 1993)).   Finally, courts have recognized a "strong presumption" that the proper venue for a case "related to" a bankruptcy proceeding is the district in which the bankruptcy proceeding is pending. *See Creekridge Capital, LLC v. La. Hosp. Ctr., LLC*, 410 B.R. 623, 629 (D. Minn. 2009); *MD Acquisition*, 2009 WL 466383, at *4; *Sudbury, Inc.*, 149 B.R. at 492 ("There is a general presumption that all matters involving a bankruptcy should be tried in the court in which the bankruptcy is pending." (omitting citations and quotations)); *GEX Ky., Inc. v. Wolf Creek Collieries Co.*, 85 B.R. 431, 435 (Bankr. N.D. Ohio 1987) ("Of all the considerations courts have weighed in this process, the most important one is whether the transfer would promote the economic and efficient administration of the estate. . . .   This consideration underlies the general rule that the court where the bankruptcy case is pending is the proper venue for all related proceedings  within the court's jurisdiction." (omitting citations and quotations)).

---

Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have *original but not exclusive jurisdiction* of all civil proceedings arising under title 11, or arising in or *related to cases under title 11.*
28 U.S.C. § 1334(b) (emphasis added).

The Bankruptcy Court for the Middle District of Tennessee has noted that there is a split of authority on the question of whether § 1412 or § 1404 governs the transfer of actions "related to" bankruptcy proceedings.  *In re DryTech, Inc.*, No. 05-07541, 2008 WL 4525331, at *4 (M.D. Tenn. Jan. 24, 2008).[4]  This Court agrees with the analysis conducted in *RFF Family Partnership, LP v. Wasserman*, No. 1:07 CV 1617, 2010 WL 420014 (N.D. Ohio Jan. 29, 2010), in which that court concluded that a motion to transfer an action that is "related to" a bankruptcy action in another forum should be analyzed under § 1404 rather than § 1412.  The district court in that case recognized that there is no Sixth Circuit authority addressing the issue, and chose to adopt the reasoning of *Dunlap v. Friedman's, Inc.*, 331 B.R. 674 (S.D.W. Va. 2005), as "sensible, logical, and well-articulated."  *RFF Family P'ship*, 2010 WL 420014, at *5.  Both courts concluded, as does this Court, that "the plain language of § 1412, read in the context of § 1409 and the legislative history of the venue provisions of the bankruptcy code, compel[s] the conclusion that congress intended § 1412 to apply to proceedings 'related to' a bankruptcy proceeding pursuant to 28 U.S.C. § 1334(b)."  *Id.* (citing *Dunlap*, 331 B.R. at 677–80).

Having determined that the issue presented in the case at bar is at least "related to" Scott Pogue's Chapter 11 bankruptcy proceedings, and that the propriety of transferring a proceeding "related to" bankruptcy proceedings pending in another district is governed by § 1412, the remaining issue to be resolved is whether transfer is appropriate under § 1412.

Section 1412 provides for transfer in the "interest of justice" *or* for the "convenience of the parties"—in other words, transfer is appropriate if either criterion is met.  *MD Acquisition*, 2009 WL 466383, at *6.  The "interest of justice" prong is "a broad and flexible standard which must be applied on a case-by-case basis."  *Gulf States Exploration Co. v. Manville Forest Prods. Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990).  Generally speaking, factors relevant to the "interest of justice" prong of § 1412 include:

> (1) economics of estate administration;
> (2) presumption in favor of the "home court";
> (3) judicial efficiency;
> (4) ability to receive a fair trial;
> (6) [sic] the state's interest in having local controversies decided within its borders, by

---

[4]  Curiously, courts are even split as to which is the majority position.  *In re DryTech, Inc.*, 2008 WL 4525331, at *4 (comparing *In re Bruno's*, 227 B.R. 311, 323 (Bankr. N.D. Ala. 1998) (asserting that a majority of cases use § 1412 transfers), with *Rumore v. Wamstad*, No. 01-2997, 2001 WL 1426680, at *2 (E.D. La. Nov.13, 2001) (noting that "most courts" hold § 1404 governs transfer of "related to" actions)., the courts are split with respect to whether § 1404(a) or § 1412 governs motions to transfer a civil case that is "related to" a bankruptcy proceeding pending in another district pursuant to 28 U.S.C. § 1334(b).

those familiar with its laws;
(7) enforceability of any judgment rendered; and
(8) plaintiff's original choice of forum.

*RFF Family P'ship*, 2010 WL 420014, at *7 (citing *In re Bruno's*, 227 B.R. at 324–25).  Many courts have held that the most important factor to be considered in determining whether to transfer venue of a bankruptcy proceeding under the interest-of-justice prong is whether transfer would promote the economic and efficient administration of the bankruptcy estate.   *See In re Bruno's*, 227 B.R. at 324 (collecting cases).

The parties in the present case have not analyzed these factors, as they only address transfer under § 1404.  In that regard, Hare, Wynn did not present any proof that transfer under § 1404 would be appropriate, and instead argued very generally that, if the matter is not dismissed outright, then the interests of justice and judicial economy mandate transfer to the Northern District of Alabama.  (Doc. No. 12, 15 12.)

Despite Hare, Wynn's failure adequately to support its motion for transfer under the § 1404 factors, this Court finds that transfer under § 1412 is warranted.  First, as explained above, the interests of the bankruptcy estate are paramount to the analysis of the "interests of justice" prong of the analysis, and "[t]he § 1412 analysis begins with the strong presumption in favor of the 'home court.'"  *RFF Family P'ship*, 2010 WL 420014, at *8 (citations omitted).  The "home court" in this case means the district in which Pogue's bankruptcy proceedings are pending, the Northern District of Alabama.  The interest of judicial efficiency also weighs strongly in favor of transfer to the "home court," as the bankruptcy court for the Northern District of Alabama already has before it all the parties to this suit as well as the relevant documentation pertaining to Mello's claims.  It is familiar with Mello's involvement in Pogue's *qui tam* case and the circumstances of the settlement of that case, and is in the best position to resolve the issue of whether the funds over which Mello has liens and an assignment should ever have been made part of the Bankruptcy Estate.

Mello contends that he cannot receive a fair trial in Alabama, but the Court finds that, while the record suggests that the court there has not been particularly receptive to his arguments thus far, it has not foreclosed his ability to pursue his claims there.  This Court will not presume that Mello cannot get a fair hearing in Alabama.  Further, while Mello has framed his claims in terms of Tennessee state law,

which this Court is in a better position to apply than is the Alabama court, the threshold legal issues presented (*i.e.*, whether Mello can state a claim against Hare, Wynn based on its failure to recognize Mello's right to payment) actually involve bankruptcy law, with respect to which this Court has no particular advantage.   And finally, while Mello's choice of forum weighs against transfer, the Court observes that he has already been pursuing his claim for attorney's fees in the bankruptcy proceeding and will likely be required to continue to do so.  The Court therefore confers little weight to this factor and concludes that, on the whole, the presumption in favor of the home court and the judicial efficiency to be gained by litigating all matters relating to the Mello's claim for attorney's fees in a single forum outweigh any possible benefit of litigating this case in Tennessee.[5]

In sum, the Court finds that the interests of justice weigh in favor of transfer to the Northern District of Alabama.   Hare, Wynn's Motion to Transfer (Doc. No. 11) is therefore **GRANTED**.   The defendant's alternative motion to dismiss as well as all other pending motions, including the Motion for Oral Argument (Doc. No. 10), are **DENIED**.  This case is hereby **TRANSFERRED** to the United States District Court for the Northern District of Alabama, where the Chapter 11 bankruptcy of Debtor Scott Pogue remains pending.

It is so **ORDERED**.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge

---

[5] Because transfer is appropriate based upon consideration of the interests of justice, the Court has no need to analyze the "convenience of the parties" factors.